IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**BRIAN CAVEY ET AL.**           *

    **V.**                          *       CIVIL NO. WDQ-12-00559

**ANDERSON., ET AL.**
                                                 *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPORT AND RECOMMENDATION

This is an action brought under Employee Retirement Income Security Act ("ERISA"). (ECF. No. 1). Plaintiffs are Asbestos Workers Local 24 Medical Fund and associated trustees, Asbestos Workers Local 24 Pension Fund and associated trustees, and Asbestos Workers Local 24 Apprenticeship Fund and associated trustees. Defendants are Craig Anderson and Tina Anderson, who are alleged to do business as RCT Enterprise, and were signatories to the 2009 Joint Trade Agreement. Plaintiffs move for an entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against the defendants for failure to appear or otherwise defend in this matter. (ECF No. 13).

This case has been referred to the undersigned magistrate judge in accordance with 28 U.S.C. § 636 and Local Rule 301 and 302. (ECF No. 14). The Court has requested and received additional supporting materials and held a hearing on January

1

15, 2013, to fully understand the damages evidence and methodology.  For the reasons set forth below, the undersigned recommends that plaintiffs' motion be GRANTED and that damages be awarded as set forth herein.

I.   **Default Judgment Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.

In deciding whether to grant a motion for default judgment, the Court must first consider the following three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct.  Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3rd Cir. 1987); see also Smith v. Bounds, 813 F.2d 1299 (4th Cir. 1987)(relying on these factors in determining whether a default judgment merited reconsideration).

The Court must also determine whether plaintiff has alleged legitimate causes of action.  In reviewing plaintiffs' Motion for Entry of a Default Judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability.  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001).  It, however, remains for the Court to

2

determine whether these unchallenged factual allegations constitute a legitimate cause of action.  Id.; see also 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3rd ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the Court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate amount of damages.  Ryan, 253 F.3d at 780-81.  Unlike factual allegations as to liability, the Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.  Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2nd Cir. 1999).  In so doing, the Court may conduct an evidentiary hearing.  FED. R. CIV. P. 55(b)(2).  The Court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for the award.  See, e.g., Stephenson v. El-Batrawi, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)(finding that a court need not make determination of damages following entry of default

through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

## II. Preliminary Factors

The Clerk of Court having filed entry of default on May 8, 2012 (ECF No. 9; ECF No. 10), the undersigned concludes that the procedural requirements for entry of default judgment have been met.  Moreover, because the defendants have failed to file any responsive pleadings or otherwise show cause as to why default should not be granted, the Court is "not in a position to judge whether any delay was the result of culpable misconduct." Sambrick, 834 F.2d at 73.  Further, defendants' failure to appear deprived plaintiffs of any other means of vindicating their claim and plaintiffs would be prejudiced if default is not granted.

## III. Discussion

### A. ERISA Claims

Plaintiff employee benefit plans and trustees bring the instant action under Sections 502(a)(3),(d)(1),(g), and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3),(d)(1),(g), and 1145.  (ECF No. 1, ¶ 1).  They move to collect "unpaid contributions, interest on the delinquent and unpaid contributions, and liquidated damages" that they allege are "owed to the employee

benefit plans as a result of the defendant's violation of the applicable collective bargaining agreements and applicable trust agreements."  (ECF No. 13-1, 6).

**1. Standing**

ERISA Section 502(a)(3) provides that a civil action may be brought by a "participant, beneficiary or fiduciary" to "obtain appropriate equitable relief . . . to redress . . . violations or . . . to enforce any provisions" of the statute or terms of the plan.  29 U.S.C. § 1132(a)(3).  An individual is a fiduciary under ERISA to the extent the person "exercises any discretionary authority or control respecting management of [a] plan or control respecting management or disposition of its assets." 29 U.S.C. § 1002 (21)(A).  In addition, ERISA Section 502(d)(1) provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity."  29 U.S.C. § 1132(d)(1).  This action is brought by the trustees of three employee benefit plans who administer the funds for the benefit of the participants and beneficiaries of the funds.  (ECF No. 1, ¶ 5, 7, 9,).  As such, they are empowered to bring an action on behalf of the plan under ERISA § 502(a)(3) and (d)(1).

Plaintiffs allege that defendants Tina and Craig Anderson were the director-trustees of RCT Enterprise ("RTC"), a now defunct corporation operating in Maryland and the District of

Columbia. (ECF No. 1, ¶ 10-11). The correctly argue that under MD. Code Ann., Corps & Ass'ns 9 3-515, "[w]hen the charter of a Maryland corporation has been forfeited, until a court appoints a receiver, the directors of the corporation become the trustees of its assets," and may be "sued in their own names as trustees." Plaintiffs allege that RCT's corporate status was forfeited and its existence was ended by the State of Maryland for a failure to file a personal property return on October 6, 1998. (ECF No. 1, ¶ 10). As such, plaintiffs have standing to sue defendants individually.

### 2. ERISA § 515

ERISA § 515 provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement. 29 U.S.C. § 1145.

In a collection action based on section 515, a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents. <u>Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.</u>, 118 F.3d 1018, 1021 (4th Cir. 1997).

The relevant controlling document here is the "Joint Trade Agreement," a collective bargaining agreement between the

6

Asbestos Workers Local 24 Union and the Insulation Contractors' Association of Washington, D.C., Inc. (ECF No. 1, ¶ 14). The Agreement establishes the terms and conditions of employment for employees of signatory employers. (ECF No. 13-1, 3). The current agreement covers the period from October 1, 2009 through September 30, 2012; a prior agreement covered the period from October 1, 2006 through September 30, 2009. (ECF No. 1, ¶ 14). Defendants, doing business as RCT Enterprise, are signatories to both agreements. (ECF No. 1-1, 19; ECF No. 1-2, 19).

Under the current Joint Trade Agreement, defendants must contribute a specified amount for each hour defendant is obligated to pay compensation to its employees. (ECF No. 1-1, Art. X(A)(3), (B)(3), (C)(3)). These amounts differ for each of the funds represented by plaintiffs. Defendants are obligated to pay $5.74 per hour to the Medical Fund for each hour defendants were obligated to pay compensation to a mechanic covered by the 2009 Joint Trade Agreement. (ECF No. 1-1, Art. X(A)(3). Defendants are obligated to pay $7.77 per hour to the Pension Fund for each hour defendants were obligated to pay compensation to all employees covered by the Joint Trade Agreement, with the exception of entry level apprentices. (Id. at Art. X(B)(3)). Defendants are obligated to pay to the apprenticeship fund $.30 for each hour worked by Journeymen, of which $.15 is an employer contribution and $.15 as a deduction

from the employee's pay, and $.55 for each hour worked by Apprentices, of which defendants were responsible for $.40 and $.15 was deducted from the employees pay. (Id. at Art. X(C)(3a-b). Finally, defendants are obligated under the Agreements to furnish, on demand, all reports on contributions deemed necessary. (Id. at Art. X(A)).

To support their factual allegations, plaintiffs rely on the declaration of Renee Parenti, an account executive at Carday Associates. Carday Associates administers the above named funds under the direction of the Boards of Trustees of the Local 24 funds. (Parenti Supp. Dec., ECF No. 19-1, ¶ 1). Ms. Parenti was responsible for the custody and control of the Funds' records. (Id.).

Based on Ms. Parenti's account of the records, plaintiffs assert that "[d]efendants have failed to meet its obligations under the Joint Trade Agreements and the Medical Trust, Pension Trust and Apprenticeship Trust in that it has repeatedly and habitually failed to remit its contributions and submit its contribution reports on a timely basis." (ECF No. 1, ¶ 28). Specifically, Ms. Parenti states that "[t]he Funds' records show that Defendants have underpaid certain contributions," and have "failed to pay certain liquidated damages and interest charges for late paid contributions." (Parenti Supp. Dec., ECF No. 19-1, ¶ 6). Ms. Parenti states that defendants "owe a total of

$6,051.74 in unpaid contributions, interest, and liquidated damages to the Funds for the period February 2009 to present." (Id.). In addition, Ms. Parenti documents that the Funds' records show that defendants "have failed to submit reports or contributions to the Funds for the work months of October 2011 through the present." (Id. at ¶ 8.). These unchallenged assertions of fact constitute a legitimate cause of action under ERISA § 515.

### 3. Damages

Plaintiffs base their claim for damages on ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), which provides:

(2) In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan--
  (A) the unpaid contributions,
  (B) interest on the unpaid contributions,
  (C) an amount equal to the greater of--
      (i) interest on the unpaid contributions, or
      (ii) liquidated damages provided for under the plan in
  an amount not in excess of 20 percent (or such higher
  percentage as may be permitted under Federal or State law)
  of the amount determined by the court under subparagraph
  (A),
  (D) reasonable attorney's fees and costs of the action, to be
  paid by the defendant, and
  (E) such other legal or equitable relief as the court deems
  appropriate.

Relying on the declaration of Ms. Parenti, Plaintiffs state that they are entitled to a total of $6,051.74 in underpaid

9

contributions, liquidated damages, and interest for work months between February 2009 October 2011.[1]

Ms. Parenti has provided the Court with a chart breaking down the amounts owed to each fund. (Parenti Supp. Dec., ECF No. 19-1, 8). The chart is based on the funds records. Liquidated damages and interest were assessed based on the methodology in the Agreements and Declarations of Trust of the Pension Fund, the Medical Fund, and the Apprenticeship Fund. (Id. at ¶ 11). Ms. Parenti's declaration indicates that liquidated damages for late payments were assessed at 20%, (Id. at ¶ 10), and interest was calculated based on a two-step process using an 18% per annum interest rate provided for in the Agreements. (Id. at ¶ 11). The first step in the two-step process involves an initial calculation of the interest owed as a result of the late payment of contributions. The second interest calculation, which occurs after the payment is made, is based on the liquidated damages and unpaid interest outstanding. (Id. at ¶ 12).

The undersigned has reviewed Ms. Parenti's declaration and the attached chart, and held a hearing with plaintiffs on January 15 to review and confirm the information and calculation. Plaintiffs have submitted additional documentation

---

[1] Plaintiffs initially sought damages beginning from November 2, 2002, but have amended their request to include only damages within the 3 year statute of limitations for this claim. (ECF No. 19-1).

at the Court's request. (ECF No. 19). The Court finds that the damages were properly calculated in the chart provided by plaintiffs. This Court therefore recommends that damages be awarded in the amount of $6,051.74.

### 4. Attorney's Fees

In an ERISA action, a district court has discretionary authority to award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved "some degree of success on the merits." Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 634 (4th Cir. 2010) (citations omitted). The court may employ a five-factor test as a general guideline in exercise of its discretion in determining whether to grant a request for attorneys' fees. Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1029 (4th Cir. 1993). The five factors include: "(1) degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." Id.

In order to properly determine an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" defined as a "reasonable hourly rate multiplied by hours reasonably expended." Grissom v. Mills Corp., 549 F.3d 313, 320–21 (4th Cir. 2008). The Court determines if fees are appropriate by assessing whether the hours worked were reasonable or include hours that were unnecessary or duplicative. The Fourth Circuit has adopted the 12 factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (1974) to consider when determining the reasonableness of attorney's fees. Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978). These include:

> the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Id.

Plaintiffs have provided an affidavit from Mark J. Murphy, a partner at the firm of Mooney, Green, Saindon, Murphy & Welch, P.C., and lead attorney on this case, detailing the billing records generated in the case. (ECF No. 13-2). Mr. Murphy

states that 2 partners billed a total of 1.3 hours on the case, 2 associates billed a total of 17.3 hours, and one law clerk billed 3.2 hours. (Id. at ¶ 4). He notes that services included drafting and filing the complaint and exhibits, legal research, drafting the affidavit for default, drafting the motion for default judgment, and communicating with the Funds' administrators. (Id.). Associates billed at $150.00 per hour, partners were billed at $200.00 per hour, and law clerks were billed at $75.00 per an hour. (Id. at ¶ 5). Total attorney's fees were $3,096.50. (Id. at ¶ 7). In addition to attorney's fees, plaintiff's incurred a filing fee of $350.00 and a process server fee of $101.25. (Id. ¶ 6). These fees fall within the lower ranges of this Court's guidelines for hourly rates for lawyers of their experience. See Local Rules, App. B(3)(d). Accordingly, the undersigned finds that attorney's fees of $3,096.50 and costs of $451.25 are reasonable and due and recommends that a total of $3547.75 be awarded in costs and fees.[2]

## Conclusion

For the reasons set forth above, the undersigned recommends that:

---

[2] Although Mr. Murphy in his declaration lists $3,096.50 for attorney's fees and $451.25 for costs, (ECF No. 13-2, ¶ 7), his total for these two numbers is $3,817.25. The Court has corrected this miscalculation.

1. The Court GRANT plaintiff's Amended Motion for Default Judgment.  (ECF No. 19).

2. The Court award plaintiff $6,051.74 for all delinquent contributions, liquidated damages and interest for the months February 2009 through September 2011;

3. The Court award plaintiff's attorney's fees and costs of $3,547.75.

4. That defendants be ordered to submit all reports and contributions owed for the months of October 2011 through present, as well as all resulting liquidated damages and interest;

5. That the Court retain jurisdiction to enter supplemental judgment based on the outstanding reports.

Date: 2/7/2013                            /s/
                                    Susan K. Gauvey
                                    United States Magistrate Judge